UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                    CASE NO. 8:24-cr-330-VMC-CPT

YACSY ALEXANDRA ALVAREZ MIRABAL

**UNITED STATES' MOTION *IN LIMINE* TO PRECLUDE
PUBLIC AUTHORITY AND ENTRAPMENT-BY-ESTOPPEL DEFENSES**

The Government respectfully moves the Court to preclude Yacsy Alexandra Alvarez Mirabal ("Alvarez") from asserting a public authority or entrapment-by-estoppel defense at trial.

Alvarez has not proffered a sufficient evidentiary foundation to support one or more of these defenses as a matter of law, pursuant to Federal Rule of Criminal Procedure 12.3. Specifically, Alvarez has not alleged that she reasonably relied on a direct communication from a specific United States official with actual (or apparent) authority to carry out the crimes charged in the indictment, or expressly assured her that her acts were not criminal, in order to satisfy Rule 12.3's particularized notice requirements, much less made the showing required to proceed with these defenses at trial. Instead, Alvarez appears to claim, based on her filings to date, that she relied on representations made by her co-defendant, Jordan Goudreau ("Goudreau"), that their conduct was authorized by the United States Government. Accordingly, the Court should preclude Alvarez from raising a public authority or entrapment-by-estoppel defense at trial.

## BACKGROUND

This case involves a scheme where Goudreau, Alvarez, and others conspired to export (and did export) AR-type firearms, night vision devices, laser sights, and other equipment from the United States to Colombia without obtaining the required export licenses. This group smuggled these items to Colombia with the intent they be used to carry out an armed incursion into Venezuela. Goudreau is a Canadian-born naturalized U.S. citizen and former Green Beret, who was living in Melbourne, Florida. Alvarez is a Venezuelan national who was residing in Colombia at the time of the scheme.

In furtherance of the conspiracy, Goudreau domestically procured the equipment, including firearm components and silencers, and coordinated with Alvarez and others for its transport to Colombia. Goudreau also enlisted the unpaid services of U.S. persons who, among other things, helped assemble approximately 60 firearms—some of which were machined to fire as fully automatic weapons—at a warehouse in Melbourne. Goudreau and Alvarez then arranged for the transport of this equipment from Florida to Colombia, flying back and forth on a private aircraft owned by Alvarez's boss. Goudreau also purchased a yacht that was intended to, at least in part, move equipment from the United States to Colombia without law enforcement detection.

On March 23, 2020, officers with the Colombian National Police seized a cache of approximately 24 semi-automatic rifles, two fully automatic rifles, laser sights, silencers, and other military-type equipment at a highway checkpoint. Earlier

2

that day, Alvarez had helped load the bags of equipment into a car at Alvarez's apartment in Barranquilla, Colombia. The weapons and accessories were intended for use at camps where mercenaries were training for an armed invasion of Venezuela.

At around the same time, Goudreau and an associate were stranded in the middle of the Caribbean on the yacht that Goudreau had purchased. The vessel, which had become inoperable, was carrying additional equipment, including firearms. They were eventually rescued by a commercial tanker and returned to the United States. The yacht, and the items on board, sank.

On May 3, 2020, several individuals in Colombia, including former Green Berets Luke Denman and Airan Berry, whom Goudreau had recruited, attempted to execute a plan to invade Venezuela by sea. The invasion was unsuccessful and, tragically, several people died. Others, like Denman and Berry, were captured and imprisoned in Venezuela until their release in December 2023.[1] Goudreau, who was in the United States at the time, immediately and publicly claimed responsibility for the failed attack.[2]

On July 16, 2024, a grand jury returned a 14-count indictment that charged Goudreau and Alvarez with conspiracy to violate export laws, in violation of 18

---

[1] *See Venezuela Releases Two Former Green Berets As Talks With U.S. Progress* (Dec. 19, 2023), https://www.forbes.com/sites/eliasferrerbreda/2023/12/19/venezuela-releases-two-former-green-berets-as-talks-with-us-progress/.

[2] *See*, e.g., *Ex-Green Beret claims he led foiled raid into Venezuela* (May 4, 2020), https://apnews.com/article/caribbean-ap-top-news-venezuela-south-america-international-news-5f44624bb7442d85e431cd64a4aed3a8.

U.S.C. § 371; smuggling, in violation of 18 U.S.C. § 554; violations of the Arms Export Control Act, in violation of 22 U.S.C. § 2778; and violations of the Export Reform Control Act, in violation of 50 U.S.C. § 4819. Doc. 1. Goudreau also was charged with possession of unregistered silencers, in violation of 26 U.S.C. § 5861(d) and unlawful possession of machine guns, in violation of 18 U.S.C. § 922(o). *Id.* While Goudreau was initially released on bond, he later fled the jurisdiction and is currently a fugitive.[3]

Alvarez was arrested on July 31, 2024, and made an initial appearance in the Middle District of Florida the same day. The government did not seek detention, and Alvarez was released on bond with conditions. Doc. 16.

Alvarez initially discussed her anticipated public authority defense in a "Notice Clarifying Defense Position." Doc. 78. There, Alvarez proffered that Goudreau video-recorded the signing of an agreement between Goudreau and the Acting President of Venezuela related to Operation Gideon.[4] *Id.* at 2. Alvarez argued that "it is inconceivable that the Acting President of Venezuela would have signed such an agreement . . . without the knowledge, and almost certainly, the

---

[3] On July 30, 2024, Goudreau was arrested in New York City and made his initial appearance in the Southern District of New York. The government moved for detention, which was denied. The government sought revocation of the release order. Doc. 22. On September 4, the Court denied the government's motion to revoke the release order and entered an order amending Goudreau's release conditions. Docs. 58 and 59. The Court later reconvened to further consider Goudreau's conditions of release. On October 31, 2025, Goudreau failed to appear in court for a continuation of the bond hearing that began two days earlier. The government learned that Goudreau had cut his ankle monitor and fled. Goudreau remains a fugitive.

[4] Alvarez has not produced this video to the United States as required under Federal Rule of Criminal Procedure 16(b)(1).

approval of the United States Government." *Id.* at 2-3.

As this case progressed—but before Goudreau fled—Alvarez and Goudreau filed a joint notice of their intent to offer a public authority defense at trial. Doc. 109. The notice vaguely asserted that Goudreau had "authority from the highest levels of the executive branch for Operation Gideon as early as May 2019 and through May 2020." *Id.* at 1. The notice identified, in narrative form, several individuals that Goudreau allegedly met with in connection with Operation Gideon, most of whom did not work for the U.S. Government, including Keith Schiller, Roen Kraft, Nestor Sainz, Lester Toledo, and JJ Rendon. *Id.* at 1-3. The notice also stated, without identifying the source of the information, that Goudreau was "advised that [Operation Gideon] was sanctioned and approved by the executive branch, particularly, Vice President Mike Pence." *Id.* at 2. The notice also stated that Drew Horn "confirmed that Mr. Goudreau was authorized to do anything necessary" and told Goudreau that "others in the government were aware and keeping abreast of the situation, including [Jason][5] Beardsley." *Id.* at 2-3.

The only portion of the defendant's notice that pertains to Alvarez states that she "relied in good faith on Mr. Goudreau's belief that he had authority to move forward in Operation Gideon." *Id.* at 3.

The Government's Response to the notice (Doc. 117) and the defendants'

---

[5] The notice incorrectly identifies "James" Beardsley, which the government understands to refer to Jason Beardsley, a U.S. Government official with whom Goudreau had communicated during this time frame.

reply (Doc. 124) focus on Goudreau's public authority arguments, but do not advance any additional arguments that Alvarez intends to make at trial regarding her alleged authority.[6]

## ARGUMENT

The umbrella of "public authority" includes three related, but distinct defenses when "a defendant has engaged in criminal conduct at the alleged behest of people who identify themselves as law enforcement officers:" 1) public authority; 2) entrapment-by-estoppel; and 3) innocent intent. *United States v. Alvarado*, 808 F.3d 474, 483-84 (11th Cir. 2015).

Alvarez has advised she plans to assert a public authority or entrapment-by-estoppel defense at trial.[7] But Alvarez's anticipated defense, regardless of vehicle, runs afoul of the law and should be prohibited.

### I.    Public authority requires authorization by a government official, which Alvarez has not shown.

"A defendant may assert a public authority affirmative defense when he has knowingly acted in violation of federal criminal law, but has done so in reasonable reliance on the authorization of a governmental official." *Id*. at 484. This "narrowly

---

[6] In its response, the Government requested (under Federal Rule of Criminal Procedure 12.3(a)(4)(A)) the name, address, and telephone number of each witness that the defendants intended to call to establish their defense. Doc. 117 at 4. To date, the Government has not received this required disclosure.

[7] While Alvarez has noticed her intent to raise these affirmative defenses, she may actually intend to proceed with an innocent intent defense, which is a "defense strategy aimed at negating the *mens rea* for the crim." *Alvarado* at 486. The *Alvarado* court noted its inability to "reexamine the merits of the 'innocent intent' theory of defense" and an innocent intent defense is only recognized in the Eleventh Circuit. *Id*. at 487-88.

defined" defense is only available if a defendant meets the following evidentiary prerequisites:

>    (1) a government official authorized him to take what would otherwise be an illegal action;
>
>    (2) this official had the actual authority to permit the action; and
>
>    (3) the defendant reasonably relied on the official's authorization.

*Id*. at 489.

The official must have possessed actual authority to authorize the illegal action; reliance on apparent authority is not a defense. *Id*. at 484 (citations omitted). This defense also requires that "a government official affirmatively communicated to the defendant the official's approval of the conduct at issue." *Id.* at 485. "An assumption that one is not required to obtain approval or that the approving official may well know of the intended action is not the same thing as having gotten authorization to take the action." *Id.* at 491. Given the parameters required to raise this defense, its application is rare and requires "great caution" before a party may advance it before a jury. *United States v. Abcasis*, 45 F.3d 39, 45 (2d Cir. 1995). Where a defendant cannot offer "*any* evidence that a law enforcement official authorized his criminal conduct" they are not entitled to a public authority defense. *Alvarado* at 489 (emphasis in original).

With that framework in mind, Alvarez's intent to rely on the affirmative defense of public authority at trial is a nonstarter. Although Alvarez has claimed she

"was explicitly told by witnesses the defense expects to testify at trial[8] that these activities were sanctioned by the United States" (Doc. 78 at 3), Alvarez's defense, as stated in the pleadings thus far, relies solely on statements made by, and other evidence created by, her co-defendant.[9] *See* Docs. 78 at 1-2; 109 at 1-3. In particular, Alvarez points to an alleged videorecording involving Goudreau and the Acting President of Venezuela to support her position that such an agreement must have been sanctioned by the United States Government. Doc. 78 at 2. But Alvarez's speculation does not equate to authorization. Instead, this speculation constitutes "[a]n assumption that . . . the [apparent] approving official may well know of the intended action." *Alvarado*, 808 F.3d at 491. To be entitled to the public authority defense, Alvarez must specifically identify a United States official who authorized her conduct. *Id*. She has failed to do so. As such, she has not "produce[d] evidence" of any of public authority's three requirements, and her defense should be precluded. *Alvarado*, 808 F.3d 474, 489.

To the extent that Alvarez intends to argue that either the acting President of Venezuela or Goudreau authorized Alvarez's conduct, that argument, too, fails. For starters, Goudreau, who was not employed by the United States government at the time, could not have authorized Alvarez's conduct. *United States v. Rosenthal*, 793

---

8 On January 24, 2025, the Government made a demand of any witnesses Alvarez intends to rely on in establishing a public authority defense. Doc. 117 at 4. Alvarez failed to provide that information in writing by January 28, 2025 as required. Fed. R. Crim. P. 12.3(a)(4)(B).

9 Since Goudreau is a fugitive and the United States does not anticipate that Goudreau will be at trial, it is unclear how Alvarez intends to introduce this evidence at trial as it is inadmissible hearsay. Fed. R. Evid. 802.

F.2d 1214, 1236 (11th Cir. 1986) (holding that "[b]ecause C.I.A. officials have no real authority to authorize conduct that would violate the Constitution or statutes of the United States, the defendants' theory that they were acting on the authority of a C.I.A. agent is not a viable defense"). Goudreau's self-described role outlined in the joint notice easily defeats any argument that he could convey authority. *See* Doc. 109 at 2 (noting that "Goudreau's company, Silvercorp, signed a letter of intent with individuals acting on behalf of President Guaido"). And Alvarez's argument that Goudreau conveyed to her that this operation was sanctioned by the government does not meet the defense's requirement of showing "communications and course of dealing" between or conveyance by a government official. *Alvarado,* 808 F.3d at 492.[10] This authority must come from a government official, not a third party.[11] But Goudreau, as explained in his notice, is just a third party and cannot serve as the basis for Alvarez's proffered defense.

Similarly, the acting President of Venezuela cannot authorize Alvarez's conduct. Public authority requires permission from a government with authority to

---

[10] Because of his status as a fugitive, this Motion does not address Goudreau's public authority defense, which also falls short of the law's requirements and should not be advanced at trial. The Government reserves all rights to challenge Goudreau's assertion of public authority.

[11] The origins of the public authority defense confirm this understanding. The defense derives from the common law affirmative defense of excuse. *United States v. Jumah*, 493 F.3d 868, 874 (7th Cir. 2007); *United States v. Pitt*, 193 F.3d 751, 756 (3d Cir. 1999) (noting that "[t]he defense of public authority is based in common law"), *abrogated on other grounds by Honeycutt v. United States*, 581 U.S. 443 (2017). These defenses are designed to avoid "sanction[ing] an indefensible sort of entrapment by the State—convicting a citizen for exercising a privilege which the State had clearly told him was available to [her]." *Cox v. Louisiana*, 379 U.S. 559, 571 (1965); *see also United States v. Thompson*, 25 F.3d 1558, 1564 (11th Cir. 1994). Inherent in that design is a focus on the Government's action. It follows that without Government action, a defendant cannot raise a public authority defense.

9

"exempt individuals from violations of federal . . . laws." *United States v. Baker*, 438 F.3d 749, 754 (7th Cir. 2006); *Rosenthal*, 793 F.3d at 1236. In other words, a foreign government official cannot authorize an individual to violate this country's law. Even assuming that a foreign president had the authority to instruct an individual to violate United States law, Alvarez has produced no direct communications between Alvarez and the then-President of Venezuela. Absent "a government official affirmatively communicat[ing] to the defendant that [s]he is authorized to engage in certain conduct," Alvarez's anticipated defense fails as a matter of law. *Alvarado.* at 485; *see also United States v. Howard*, Case No. 18-cr-667, 2024 WL 2020162, at *6 (N.D. Ill. 2024) (quoting *United States v. Stallworth*, 656 F.3d 721, 7272 (7th Cir. 2011)).

Because she has failed to demonstrate that she was authorized by a U.S. government official that had authority to authorize the violation of U.S. law, Alvarez should be precluded from asserting a public authority defense at trial.

II.     **Entrapment-by-estoppel also requires authorization by a government official, so Alvarez has failed to make out that defense as well.**

Any effort by Alvarez to assert an entrapment-by-estoppel defense fares no better. This defense is closely related to the public authority defense. *Alvarado*, 808 F.3d at 484 (citing *United States v. Baker*, 438 F.3d 749, 753 (7th Cir. 2006)). An entrapment-by-estoppel defense applies to a defendant "who reasonably relies on the assurance of a government official that specified conduct will not violate the law." *Id.* (citations omitted). "Entrapment-by-estoppel is an affirmative defense that provides a

10

narrow exception to the general rule that ignorance of the law is no defense." *United States v. Funches*, 135 F.3d 1405, 1407 (11th Cir. 1998).

Like the public authority defense, the defendant's reliance on an official's reassurance must be reasonable and the defendant must show that "a government official affirmatively communicated to the defendant the official's approval of the conduct at issue." *Alvarado*, 808 F.3d at 485 (citations omitted). Unlike the public authority defense, which requires the government official had actual authority, for entrapment-by-estoppel, the government official need only have apparent authority. *Id*. (citation omitted). But still, this defense requires reliance on a government official's reassurance. *See Funches* at 1407 ("To assert this defense successfully, a defendant must actually rely on a point of law misrepresented by an official of the state; and such reliance must be objectively reasonable—given the identity of the official, the point of law represented, and the substance of the misrepresentation.").

Without the identity of a government official who authorized the conduct, Alvarez's entrapment-by-estoppel defense also fails. As explained above, Alvarez has not identified a single United States official that authorized Alvarez to engage in criminal conduct. *See Alvarado*, 808 F.3d at 485. Alvaraz also cannot point to Goudreau, who had *no* authority to authorize this action (and, in any event, has not asserted that he did) to support her defense. Nor can she rely on statements made by the president of a foreign government. *Id*. And even assuming for the sake of argument that Alvaraz did rely on such statements, such reliance would not be reasonable, given that they did not have any actual or apparent authority to permit

this conduct.

Thus, Alvarez should also be precluded from asserting an entrapment-by-estoppel defense.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that Court preclude defendant Alvarez from raising a public authority or entrapment-by-estoppel affirmative defenses at trial.

Respectfully submitted,

JOHN A. EISENBERG
Assistant Attorney General

GREGORY W. KEHOE
United States Attorney

By:  /s/ *Aaron L. Jennen*
Aaron L. Jennen
Arkansas Bar No. 2004156
Trial Attorney
U.S. Department of Justice
National Security Division
950 Pennsylvania Avenue, NW
Washington, DC 20530
Tel: 202-305-4693
Aaron.Jennen@usdoj.gov

By:  /s/ *Michael J. Buchanan*
Michael J. Buchanan
Assistant United States Attorney
Fla. Bar No. 1020224

Lindsey N. Schmidt
Assistant United States Attorney
United States Attorney No. 222

400 N. Tampa St., Ste. 3200
Tampa, FL 33602-4798
Tel: (813) 274-6000
Fax: (813) 274-6358

Michael.Buchanan2@usdoj.gov
Lindsey.Schmidt@usdoj.gov

**U.S. v. Alvarez Mirabal**                    **Case No. 8:24-cr-330-VMC-CPT**

## CERTIFICATE OF SERVICE

I hereby certify that on July 1, 2026, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

/s/ *Michael J. Buchanan*
Michael J. Buchanan
Assistant United States Attorney
Fla. Bar No. 1020224
400 N. Tampa St., Ste. 3200
Tampa, FL 33602-4798
Telephone: (813) 274-6000
Facsimile: (813) 274-6358
E-mail: Michael.Buchanan2@usdoj.gov