**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**UNITED STATES OF AMERICA**

**v.** **Case No. 8:24-cr-330-VMC-CPT**

**YACSY ALEXANDRA ALVAREZ MIRABAL.**
**________________________________________/**

**REPLY IN SUPPORT OF DEFENSE MOTION**
**FOR TESTIMONY OF PRESIDENT DONALD J. TRUMP**

Ms. Yacsy Alexandra Alvarez Mirabal ("Ms. Alvarez") replies as follows to the government's opposition to this subpoena, Doc. 318 ("Govt. Opp.").

President Donald Trump is an essential defense witness in this case. The government's concession that Ms. Alvarez is entitled to present an "innocent intent" defense, a form of "public authority," makes the President's deposition even more critical to her defense—and obviates any need for the Court to first decide the government's motion *in limine* to preclude her assertion of public authority: If the Court decides otherwise, it should rule on both motions with the benefit of the Defendant's requested evidentiary hearing, *see* Doc. 304. Finally, Ms. Alvarez addresses the government's assertion of executive privilege,

and agrees that *United States v. Nixon*, 418 U.S. 683 (1974) provides excellent guidance for deciding this issue. The government, in *Nixon*, unsuccessfully sought to quash a Rule 17(c) subpoena seeking recordings of the President's conversations with aides and advisers. *See id.* at 686.

**I. President Trump Is An Essential Defense Witness.**

The government has repeatedly conceded that Ms. Alvarez is entitled to present an "innocent intent" defense at trial, Govt. Opp.at 12, Doc. 310 at 1, Doc. 307 at 5–6. "Innocent intent" is one of the three iterations of a "public authority" defense as explained in *United States v. Alvarado*, 808 F.3d 474, 486 (11th Cir. 2015). Unlike the first two forms—direct public authority and entrapment-by-estoppel—innocent intent leaves the burden of proof entirely with the government.

> . . . . [U]nlike public authority and entrapment-by-estoppel, which are affirmative defenses, an innocent intent theory is a defense strategy aimed at negating the *mens rea* for the crime. . .. [T]he defendant may argue his innocent intent as a means to persuade the jury that the prosecution has not met its burden of proof.
>
> . . . [W]here a defendant is found not to have met the requirements necessary for a public authority defense, he can nonetheless effectively backdoor the rejected defense by testifying that he genuinely believed that the criminal acts he performed were done at the direction, and with the permission, of an appropriate governmental agency. . . Indeed . . . a defendant need only raise a reasonable doubt as to whether he possessed the necessary criminal intent. . ..
>
> Our Circuit has now, for three decades and in several cases, affirmed the viability of this innocent intent defense in cases where the defendant argues that his criminal acts were undertaken as part of his cooperation with the Government.

It is difficult to envision anything more compelling than the sworn, video-recorded testimony of the President that he authorized "Operation Gideon" Ms. to "raise a reasonable doubt" that Ms. Alvarez "genuinely believed the criminal acts [s]he performed were done at the direction, and with the permission, of an appropriate governmental agency" as part of her "cooperation with the Government." If what Alvarez genuinely believed—that President Trump authorized Gideon's "armed incursion into Venezuela to remove Nicolas Maduro Moros from power," *see* indictment, Doc. 1 at 2, is *true*, a jury is much more likely to believe that Ms. Alvarez *genuinely believed* it. And if the jury finds she did, they must acquit her. Indeed, this satisfies the standard for relevance and materiality the government articulates, Govt. Opp. at 7, ("[T]estimony is relevant and material if it 'might be sufficient to create a reasonable doubt' about guilt. *United States v. Valenzuela-Bernal*, 458 U.S. 858, 868 (1982)").

Notwithstanding the government's gaslighting on Alvarez' factual foundation for seeking Mr. Trump's testimony, her motion provides an ample basis, see Doc. 308, 4–21, for her belief that the President authorized Gideon. There is little question that in January 2019 President Trump formally recognized then-Venezuelan opposition leader Juan Guaidó as the legitimate president of the country, notified congressional offices of this and " served notice to the Federal Reserve that Guaidó [was] the agent for access to Venezuelan assets in U.S. banks," *id.* at 6. Add to this the subsequent—and consequent—interaction

between administration officials over 2019–20, including Andrew Horn, a senior aide to then-Vice President Pence, Keith Schiller, and other associates of President Trump, as detailed by Alvarez in her pleading. Consider then the contract Guaidó executed with Jordan Goudreau, Secretary Esper's account of the White House meeting February 5, 2020, with Guaidó and Esper's informed belief about the provenance of Gideon in his memoir, *see* Doc. 308 at 16–17, and much more, and it more than satisfies the Circuit standard for issuing a Rule 17(b) subpoena:

> [O]nce the defendant asserts facts which, if true, would be relevant to any issue, the motion for a subpoena must be granted unless the assertions are facially incredible or unless the government can show that they are untrue or that the request is frivolous.

*United States v. Hedgwood*, 562 F.2d 946, 953 (5th Cir. 1977).

**II. It is Reasonable to Decide This Subpoena Motion Without the Court First Ruling on the Government's *Motion in Limine*, but Not Without an Evidentiary Hearing.**

The government urges the Court to decide its motion to preclude the public authority and entrapment-by-estoppel defenses prior to ruling on this subpoena. However, if the Court decides otherwise, Ms. Alvarez requests that it conduct the evidentiary hearing described in her motion, Doc. 304, for deciding both the preclusion motion and the request for President Trump's deposition testimony. The Court's decisions on both issues should be based on evidence produced in a hearing before the Court with sworn testimony by relevant,

percipient witnesses. Aside from the importance of the Court's decisions on these matters, an interlocutory appeal of these decisions is a realistic possibility. Of course, the government has a permissive right to such an appeal, but the defense would likely seek the Court's leave to appeal an adverse ruling. Therefore, the Court and the parties would be well-served by a full record if such an appeal occurs.[1]

**III. The Defense Request for Deposition Testimony is Not Barred by Executive Privilege Or Precedent.**

As the government asserts, Govt. Opp. at 1, courts must "subject subpoenas to the President to a 'particularly meticulous' standard of review. [*Nixon*, 418 U.S. at 702]." Further, at Govt. Opp. at 6, the government cites *United States v. Burr*, 25 F. Cas. 187, 192 (C.C.D. Va. 1807) to assert this "Court should not 'proceed against the president as against an ordinary individual.'" However, the government omits important language directly on point here from *Nixon*, 418 U.S. at 708–09, using this same 1807 quote. *Nixon* continues:

> But this presumptive [executive] privilege must be considered in light of our historic commitment to the rule of law. This is nowhere more profoundly manifest than in our view that "the twofold aim (of criminal justice) is that guilt shall not escape nor innocence suffer." *Berger v. United States*, 295 U.S. [78] at 88 [(1935] . . .. We have elected to employ an adversary system of criminal justice in which the parties contest all issues

[1] The government, of course, has a liberal standard for interlocutory appeals. *See* 18, U.S.C. § 3731, which was "intended to remove all statutory barriers to Government appeals and allow appeals whenever the Constitution would permit." *United States v. Wilson*, 420 U.S. 332, 337–39 (1975). A defendant's interlocutory appeal must generally be authorized by the District Court under standards set forth in 5 U.S.C. § 1201.92. *See also United States v. Hastings*, 601 F.2d 706 (11th Cir. 1982).

> before a court of law. The need to develop all relevant facts in the adversary system is both fundamental and comprehensive. The ends of criminal justice would be defeated if judgments were to be founded on a partial or speculative presentation of the facts. The very integrity of the judicial system and public confidence in the system depend on full disclosure of all the facts, within the framework of the rules of evidence. To ensure that justice is done, it is imperative to the function of the courts that compulsory process be available for the production of evidence needed either by the prosecution or by the defense.

*Nixon*, at 710, further elaborates by pointing out that while there is no "explicit reference to a privilege of confidentiality" in the Constitution, it is nevertheless "constitutionally based." The right to a fair trial, however, *is explicit*:

> The right to the production of all evidence in a criminal trial similarly has constitutional dimensions. The Sixth Amendment explicitly confers upon every defendant in a criminal trial the right . . . "to have compulsory process for obtaining witnesses in his favor." Moreover, the "Fifth Amendment also guarantees that no person shall be deprived of liberty without due process of law. It is the manifest duty of the courts to vindicate those guarantees, and to accomplish that it is essential that all relevant and admissible evidence be produced.

The *Nixon* Court then laid out procedures for "in camera inspection of evidence" for "scrupulous protection against any release or publication of material not found . . . probably admissible and relevant to the issues of the trial for which it is sought." *Id.* at 714. Similarly, in *Clinton v. Jones*, 520 U.S. 681, 692 (1997), *see* Govt. Opp. at 1, President Clinton was not required to appear in person and, in fact, the district judge presiding over that civil case travelled to Washington, D.C. to personally preside over the deposition.

Similarly, Judge Virginia M. Hernandez Covington, presiding here, might oversee this requested deposition "at the White House or at a time that will

accommodate [President Trump's] busy schedule." *See* 520 U.S. at 692. This would ensure that the deposition would be handled properly and any privilege or other evidentiary disputes would be expeditiously and properly resolved.

**WHEREFORE**, Ms. Alvarez submits she has established the requested testimony is essential to her defense of this case, and that it can be obtained without undue inconvenience to the President or infringement of any established doctrine of executive privilege.

Respectfully submitted,

S/Christophir A. Kerr
Christophir A. Kerr, Esq.
Lead Counsel for the Defendant
Christophir A. Kerr, P.A.
Florida Bar No. 72041
13801 Walsingham Rd., #A-154
Largo, FL 33774
Tel: (727) 492-2551

S/Bjorn E. Brunvand
BJORN E. BRUNVAND, ESQ.
Co-Counsel for the Defendant
BRUNVAND, WISE & FARINELLA
LAW GROUP
615 Turner Street
Clearwater, Florida 33756
Telephone No.: (727)446-7505
Email: bjorn@acquitter.com
Florida Bar No. 831077

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that the foregoing has been furnished by electronic filing to the Clerk of the Court, U.S. District Court, Middle District of Florida, U.S. Courthouse, 801 N. Florida Ave., #223, Tampa, FL 33602-3800, on this 23rd day of September 2026, for distribution to parties of record.

S/Christophir A. Kerr
Christophir A. Kerr